UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
STEVEN SYDER,

            Petitioner,

    - against –

UNITED STATES OF AMERICA,

            Respondent.

------------------------------X

**MEMORANDUM AND ORDER**

17 CR 054-3
22 CIV 9896 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Defendant Steven Syder ("Syder") was convicted -- along with his co-defendants Jason Campbell ("Campbell"), and Sean Peter ("Peter") -- after a jury trial of all three counts of a January 2017 indictment, charging: (1) a conspiracy to distribute and possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(D); (2) murder through the use of a firearm during and in relation to a narcotics conspiracy, in violation of 18 U.S.C. § 924(j); and (3) possession of a firearm that was discharged during and in relation to a narcotics conspiracy, in violation of 18 U.S.C. § 924(c)(1)(A)(iii).  See United States v. Peter, No. 17-cr-054 (NRB), 2019 WL 2918226 (S.D.N.Y. July 8, 2019) at *1 ("Peter I"), aff'd sub nom. United States v. Campbell, 850 F. App'x 102 (2d Cir. 2021).  Before the Court is Syder's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  Syder contends: (1) the

Government violated its obligations under <u>Brady v. Maryland</u> when it knowingly withheld information about exculpatory statements made by an individual identified only as "Calvin"; (2) his two lawyers[1] were ineffective for failing to properly investigate, failing to interview, call, and/or cross-examine certain fact witnesses, failing to present an alternative theory as to why the shooting happened, and failing to challenge the testimony of Julian Martinez ("Martinez"), a Government witnesses; (3) the Government engaged in prosecutorial misconduct by offering fabricated testimony at trial and failing to interview certain witnesses; and (4) the evidence presented at trial was insufficient to sustain Syder's conviction.   ECF Nos. 198 (the "Petition"); 203 ("Pet. Br."); 204 ("Pet. Supp. Br."); 221 ("Pet. Reply Br.").[2]   For the reasons stated herein, the Petition is denied.

## BACKGROUND

The Court presumes familiarity with the facts of this case, which have been thoroughly recounted in prior opinions.   <u>See</u> <u>Peter</u>

---

[1] Andrew G. Patel was appointed to represent Syder pursuant to the Criminal Justice Act.   <u>See</u> Dkt. 17-cr-54, ECF No. 12.   Syder was also represented by Donald Joseph Yanella III as learned counsel while the Government decided whether to seek the death penalty.   <u>See</u> ECF No. 15.   Although the Government chose not to seek the death penalty, <u>see</u> ECF No. 49, the Court permitted both lawyers to continue their representation of Syder throughout the remainder of the action, including during trial.   We also note that Benjamin Adam Silverman appeared as Mr. Patel's associate counsel.   <u>See</u> ECF No. 23.   In total, the three defendants in this case were represented by six lawyers, three of whom were members of the Southern District of New York's Capital Panel.

[2] Unless otherwise specified, all citations are to Dkt. 17-cr-54-03.

I; Campbell, 850 F. App'x 102; United States v. Peter, No. 17-cr-54-01 (NRB), 2022 WL 2657127 (S.D.N.Y. July 7, 2022) ("Peter II"); United States v. Peter, No. 17-cr-054-01 (NRB), 2023 WL 4053190, at *2 (S.D.N.Y. June 16, 2023) ("Peter III").[3]

For purposes of this Memorandum and Order, and in brief, defendants were convicted of the above-referenced crimes resulting from their October 2, 2012 murder of Brian Gray in furtherance of a narcotics conspiracy. Peter II, 2022 WL 2657127, at *1. At trial, the Government presented evidence that the defendants murdered Gray in retaliation for an attempted robbery by Gray and Martinez of a "stash house" at which Sean Peter's brother, Shane Peter (a/k/a "Streets"), stored marijuana (the "Stash House"). Id.; see also Transcript of December 2018 Trial ("Tr.") at 515-16, 526, 530; Peter I, 2019 WL 2918226, at *11. During the attempted robbery, Sean Peter confronted Gray and Martinez outside of the Stash House, at which point Martinez pulled out his gun and tried to shoot Peter, but the gun malfunctioned. See Tr. at 530-31.

---

[3] In Peter I, this Court denied defendants' post-verdict motions seeking a judgment of acquittal based on the alleged insufficiency of the evidence under Fed. R. Crim. P. 29 or alternatively a new trial based on alleged trial defects under Fed. R. Crim. P. 33. See Peter I. In Peter II, this Court denied defendants' second motion for a new trial, which was based on purported "new evidence" in the form of an affidavit from Sean Peter's brother, Shane Peter. See Peter II. Finally, in Peter III, this Court denied Sean Peter's petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on ineffective assistance of counsel grounds. See Peter III.

Approximately two weeks later, defendants tracked down and murdered Gray in retaliation.  Defendants' participation in the murder was demonstrated at trial through eyewitness testimony and by surveillance video.  Peter I, 2019 WL 2918226, at *11–*12.  Sean Peter was also shot at the scene, causing defendants to drive to a hospital in New Jersey after the murder, where they gave coordinated false exculpatory statements.  Id. at *12.  Law enforcement recovered a black duffel bag from the van that transported the defendants to the hospital, which contained, inter alia, more than a pound of marijuana, a digital scale, hundreds of Ziploc baggies, $3,674.00 in cash, three different kinds of ammunition (including spent shell casings) matching the types found at the scene of Gray's fatal shooting, and a cellphone belonging to one of the other shooting victims.  Id. at *3.

Defendants were subsequently arrested at the hospital and convicted after a jury trial.  Peter II, 2022 WL 2657127, at *2; ECF No. 167; Tr. at 238–41.  Following their convictions, and as noted supra n.3, defendants moved pursuant to Fed. R. Crim. P. 29 to set aside the verdict and pursuant to Fed. R. Crim. P. 33 for a new trial.  ECF Nos. 111, 117.  Those motions were denied by this Court in a lengthy opinion, Peter I, 2019 WL 2918226, and defendants' convictions were affirmed by the Second Circuit.  Campbell, 850 F. App'x 102 (2d Cir. 2021).  The defendants'

-4-

subsequent petition for rehearing en banc was denied on July 13, 2021, and the Circuit's mandate was filed on this Court's docket on July 26, 2021.  ECF No. 181.

On August 12, 2021, all defendants, pro se, submitted a second motion for a new trial based on purported "new evidence" in the form of an affidavit from Streets, Peter's brother.  ECF No. 182. This Court denied that motion in a separate opinion, Peter II, 2022 WL 2657127, at *5.  Syder's appeal was dismissed on April 19, 2023, Dkt. 22-1675, No. 124, and the Circuit's mandate was filed on this Court's docket on May 30, 2023.  ECF No. 212.

On November 18, 2022, the Court received a motion filed by Syder under 28 U.S.C. § 2255 -- which was signed on November 10, 2022 -- along with a request for a 90-day extension to file a memorandum in support.  ECF No. 198; Dkt. 22-cv-9896, ECF No. 2 ("Pet. Extension Request").  Syder claimed in his extension request that he actually submitted his motion "on or about August 4, 2022," when he "personally handed" a completed petition to a "housing unit staff member" to be placed in the institutional legal mail box [sic]," but that petition was never filed.  ECF No. 198, at 13; Pet. Extension Request, at 1.  In support, Syder attached a letter dated October 24, 2022 to his extension request addressed to the Southern District's Clerk of Court, which requested an update on the "2255 motion form [he] mailed back in August of this

year." Pet. Extension Request, at 3. Syder writes that he then received a blank § 2255 motion form in response to his October letter, "became . . . confused," and called an individual at the "Pro Se Intake [U]nit," who advised him to file another petition along with a letter of explanation. Pet. Extension Request, at 1-2.[4]

On December 1, 2022, this Court granted Syder's request for a 90-day extension to file a memorandum in support "without prejudice to the resolution of the issue of whether his [§ 2255] motion was timely filed." Dkt. 22-cv-9896, ECF No. 4.

Thereafter, Syder filed a memorandum of law dated February 28, 2023 and received by the Court on March 6, 2023. See Pet. Br. As discussed above, Syder alleges that his conviction should be vacated on grounds of: Brady violations; ineffective assistance of counsel; prosecutorial misconduct; and insufficient evidence. See id. On March 17, 2023, Syder filed a motion seeking leave to amend and/or supplement the Petition and add an additional ineffective assistance ground. See Pet. Supp. Br. On April 28, 2023, the Government filed its opposition, arguing that the Petition is time-barred, some of Syder's claims are procedurally barred, and, in

---

[4] The petition and letter of explanation which Syder filed after his communications with the Pro Se Unit are the aforementioned documents this Court received on November 18, 2022. See ECF No. 198; Pet. Extension Request.

any event, all of his claims fail on the merits.  ECF No. 208

("Gov't Opp.").  Last, Syder filed a reply memorandum of law dated

August 2, 2023 and received by the Court on August 8, 2023.  See

Pet. Reply Br.

## LEGAL STANDARDS[5]

### I.    Timeliness

Under 28 U.S.C. § 2255(f)(1), a motion to vacate must be filed

within one year of "the date on which the judgment of conviction

became final."  28 U.S.C. § 2255(f)(1).  "For the purpose of

starting the clock on § 2255's one-year limitation period, . . .

a judgment of conviction becomes final when the time expires for

filing a petition for certiorari contesting the appellate court's

affirmation of the conviction."  Clay v. United States, 537 U.S.

522, 525 (2003).

The  district  court  may  equitably  toll  the  one-year

limitations period, but "a petitioner must show that extraordinary

circumstances prevented him from filing his petition on time, and

he must have acted with reasonable diligence throughout the period

---

[5] Courts are to construe the submissions and arguments of pro se habeas
petitioners like Syder to "raise the strongest arguments that they suggest."
McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks
omitted)).  Proceeding pro se, however, "does not exempt a party from compliance
with relevant rules of procedural and substantive law," Triestman v. Fed. Bureau
of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (quoting Traguth v. Zuck, 710 F.2d
90, 95 (2d Cir. 1983)), and thus petitioner must still prove his § 2255 claims
by a preponderance of the evidence.

he seeks to toll." <u>Hizbullahankhamon v. Walker</u>, 255 F.3d 65, 75 (2d Cir. 2001) (internal quotation marks omitted).  The Second Circuit "set[s] a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling." <u>Dillon v. Conway</u>, 642 F.3d 358, 363 (2d Cir. 2011) (per curiam); <u>accord</u> <u>Rivera v. United States</u>, 448 F. App'x 145, 146 (2d Cir. 2011).  Indeed, "[t]o show that extraordinary circumstances 'prevented' him from filing his petition on time, petitioner must 'demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.'" <u>Hizbullahankhamon</u>, 255 F.3d at 75 (quoting <u>Valverde v. Stinson</u>, 224 F.3d 129, 134 (2d Cir. 2000)).

## II.  <u>**Brady**</u> **on Collateral Review**

In order to establish a <u>Brady v. Maryland</u> violation on collateral review:

> the defendant must show that (1) the government suppressed favorable evidence, and (2) the evidence the government suppressed was material.  A defendant cannot satisfy the suppression requirement if the defendant, directly or through counsel, either knew, or should have known, of the essential facts permitting him to take advantage of [that] evidence.  As for the materiality requirement, favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the

result of the proceeding would have been different.  A
'reasonable probability' is a probability sufficient to
undermine confidence in the outcome' of the case.

Lamberti v. United States, 22 F. Supp. 2d 60, 67 (S.D.N.Y. 1998),

aff'd sub nom. Badalamenti v. United States, 201 F.3d 430 (2d Cir.

1999) (internal footnotes, quotation marks, and citations

omitted).  "The burden of proving that the Government failed to

disclose such evidence lies with the petitioner and conclusory

allegations that the Government suppressed or concealed evidence

are insufficient to satisfy this burden."  United States v. Marley,

No. 16-cr-374 (VEC), 2022 WL 1210844, at *10 (S.D.N.Y. Apr. 25,

2022), appeal dismissed (July 21, 2022) (quoting Wolfson v. United

States, 907 F. Supp. 2d 418, 424–25 (S.D.N.Y. 2012)).

### III. Ineffective Assistance of Counsel

In order to establish a claim of ineffective assistance of
counsel, a party must both show that (1) "counsel's representation
fell below an objective standard of reasonableness," and that (2)
counsel's "deficient performance prejudiced the defense."
Strickland v. Washington, 466 U.S. 668, 687–88 (1984).  "The
performance inquiry must be whether counsel's assistance was
reasonable considering all circumstances."  Id. at 688.  In
reviewing counsel's performance, judicial "scrutiny . . . must be
highly deferential," id. at 699, and a defendant seeking to
overturn a conviction on the ground of ineffective assistance of

counsel "bears a heavy burden." United States v. Gaskin, 364 F.3d 438, 468 (2d Cir. 2004). Indeed, the question under Strickland is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington v. Richter, 562 U.S. 86, 131 (2011) (internal quotation marks omitted).

Moreover, it is axiomatic that "a court reviewing a claim for ineffective assistance of counsel is not permitted to 'use hindsight to second guess [counsel's] strategy choices.'" Baran v. United States, 160 F. Supp. 3d 591, 596 (S.D.N.Y. 2016) (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)). "[T]o the extent an attorney's strategic decisions and trial tactics are reasonably informed under the circumstances, the petitioner cannot, with the benefit of hindsight, second-guess these decisions posttrial to present a colorable claim of ineffective assistance of counsel." Rodriguez v. United States, No. 09-cr-58 (NRB), 2013 WL 3388223, at *3 (S.D.N.Y. July 8, 2013).

IV.   **Prosecutorial Misconduct**

"To merit habeas relief on a claim of prosecutorial misconduct, petitioner must show that the alleged misconduct denied him a fair trial." Mendez v. United States, 379 F. Supp. 2d 589, 598 (S.D.N.Y. 2005) (citing Greer v. Miller, 483 U.S. 756, 765 (1987)). A petitioner "must establish that the prosecutor's

actions 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  Id. (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)).  Collateral review of prosecutorial misconduct claims is unavailable, and such claims are procedurally defaulted, if they were not raised on direct appeal.  See Orbach v. United States, No. 11-cr-111 (NRB), 2017 WL 5632815, at *6 (S.D.N.Y. Nov. 7, 2017); see also United States v. Thorn, 659 F.3d 227, 231 (2d Cir. 2011) ("In general, a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal.").  "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either [1] 'cause' and actual 'prejudice,' or [2] that he is 'actually innocent.'"  Bousley v. United States, 523 U.S. 614, 622 (1998) (internal citations omitted, alterations added).

## V.  Insufficient Evidence

"When there is a challenge to the sufficiency of the evidence supporting a conviction, the Court 'will uphold a conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Lasher v. United States, No. 12-cr-868 (NRB), 2018 WL 3979596, at *3 (S.D.N.Y. Aug. 20, 2018) (first quoting United States v. Dupree, 870 F.3d 62, 78 (2d

Cir. 2017), and then quoting <u>United States v. Rosemond</u>, 841 F.3d 95, 113 (2d Cir. 2016)).  "It is well established that a § 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'"  <u>United States v. Pitcher</u>, 559 F.3d 120, 123 (2d Cir. 2009) (quoting <u>United States v. Sanin</u>, 252 F.3d 79, 83 (2d Cir. 2001)).

## DISCUSSION

### I.   **Syder's Motion is Untimely**

Syder's motion is time-barred and must be dismissed on that basis alone.

First, Syder's petition was filed after the expiration of the one-year statute of limitations set forth in 28 U.S.C. § 2255(f)(1).  His conviction was affirmed on appeal by the Second Circuit on April 8, 2021, defendants' petition for a rehearing <u>en banc</u> was rejected on July 13, 2021, and the Circuit's mandate was communicated to this Court on July 26, 2021.  At the absolute latest, Syder should have filed the Petition by October 11, 2022.[6]

---

[6] When a defendant in a federal prosecution takes an unsuccessful direct appeal from a judgment of conviction, but does not next petition for a writ of certiorari, the judgment becomes "final" for postconviction relief purposes on the date when the time for filing a petition for certiorari expires.  <u>See</u> <u>Clay</u>, 537 U.S. at 524-25.  "A petition for certiorari must be brought within 90 days . . . from the denial of a motion for rehearing en banc if such a motion is made."  <u>United States v. Jean</u>, No. 13-cr-280 (DC), 2018 WL 4771530, at *2 (S.D.N.Y. Oct. 3, 2018); <u>see</u> Sup. Ct. Rule 13(1) (petition for <u>certiorari</u> due 90 days after entry of the Court of Appeals' judgment); Sup. Ct. Rule 13(3) ("The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate . . . .").

However, Syder filed the Petition nearly one month late, on November 10, 2022.  See ECF No. 198.[7]  It therefore cannot be disputed that the Petition was submitted beyond the statute of limitations.

Second, Syder is not entitled to equitable tolling, as (i) no "extraordinary circumstances" prevented Syder from filing his petition on time; and (ii) Syder did not exercise reasonable diligence during the period he seeks to toll.

With respect to the first prong, "[i]t is exceedingly rare for courts in the Second Circuit" to find that extraordinary circumstances exist.  Hernandez v. Khahaifa, No. 10-cv-6582 (KMK), 2013 WL 3984958, at *13 (S.D.N.Y. July 31, 2013) (quoting Corrigan v. Barbery, 371 F. Supp. 2d 325, 331 (W.D.N.Y. 2005)) (internal alterations omitted).[8]  Here, Syder writes that he mailed his petition in August, but it was not delivered or received, which he attributes to problems with the mail in prison.  However, such

---

[7] As noted supra, the Court received the Petition on November 18, 2022.  However, under the "prison mailbox" rule, the relevant date to assess the timeliness of a pro se prisoner's habeas petition is when such petition is placed in the prison mailing system, not when it is received.  See Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001); Mingo v. United States, 360 F. Supp. 2d 591, 593 (S.D.N.Y. 2005).

[8] "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period."  Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011).  However, "it is not enough for a party to show that he experienced extraordinary circumstances.  He must further demonstrate that those circumstances caused him to miss the original filing deadline."  Id.

"difficulties inherent to prison life generally 'are not extraordinary circumstances for purposes of equitable tolling.'" Morrison v. United States, No. 07-cr-3 (LAP), 2021 WL 1635852, at *3 (S.D.N.Y. Apr. 26, 2021) (quoting Lora v. United States, No. 07-cv-6936, 2007 WL 4966776, at *3 (S.D.N.Y. Nov. 21, 2007)). Indeed, Syder acknowledges that incoming and outgoing mail is "frequently" lost or not delivered at FCI Ray Brook, "especially during lockdowns," which belies the argument that he faced extraordinary circumstances. See Pet. Extension Request, at 1–2. And to the extent Syder alleges that prison officials interfered with his mail, a petitioner does not demonstrate extraordinary circumstances when he fails to put forth corroborating evidence of mail interference. See Muller v. Greiner, No. 03-cv-1844 (SAS), 2004 WL 97687, at *4 (S.D.N.Y. Jan. 20, 2004), aff'd, 139 F. App'x 344 (2d Cir. 2005). Here Syder provides none.[9]

With respect to reasonable diligence, Syder admits that he did not follow up on the petition he purportedly filed in early August 2022 for "a couple of months." Pet. Extension Request, at 1–2. Indeed, petitioner did not write for an update on the Petition until October 24, 2022, approximately two weeks after his

---

[9] Syder also alludes to pandemic-related limitations, but such restrictions alone do not constitute "extraordinary circumstances." See Hines v. United States, No. 17-cr-364-2 (CS), 2021 WL 2456679, at *2 (S.D.N.Y. June 16, 2021) (noting that "thousands of prisoners . . . were able to file motions for compassionate relief and other applications during the pandemic").

October 11, 2022 deadline to file a timely § 2255 motion.  Id. at
1, 3; Pet. Reply Br. at 2-3.  That is insufficient to demonstrate
reasonable diligence.  See Harper, 648 F.3d at 138 (noting that
"equity aids the vigilant," and a petitioner must act with
"reasonable diligence throughout the period he seeks to toll")
(internal quotation marks omitted); see also Valverde, 224 F.3d at
134 ("If the person seeking equitable tolling has not exercised
reasonable diligence in attempting to file after the extraordinary
circumstances began, the link of causation between the
extraordinary circumstances and the failure to file is broken, and
the extraordinary circumstances therefore did not prevent timely
filing.").

Accordingly, Syder's motion is time-barred, and we need not
reach the merits.  Nonetheless, we address why petitioner's
asserted grounds for relief -- even if timely -- fail, beginning
with his Brady claim.

## II.  Syder's **Brady** Claim Is Meritless

Syder first alleges that the Government "knowingly suppressed
favorable exculpatory evidence in the form of witness
statements[,] which is a clear Brady violation."  Pet. Br. at 5
(emphasis in original).  Specifically, he asserts that the
Government knowingly failed to disclose information regarding an
alleged NYPD interview of a witness identified only as "Calvin,"

who allegedly informed law enforcement officers that Syder was not involved in the underlying marijuana conspiracy charged in Count One of the Indictment.  Id. at 5-10.  According to petitioner, the Government "intentionally suppressed" Calvin's statements, because they were inconsistent with the Government's "core narrative" -- i.e., that Syder participated in Gray's murder in furtherance of the charged marijuana conspiracy.  Id. at 8-9.

As an initial matter, Syder's Brady claim is conclusory.  The Government is correct that "[t]he defendant did not submit an affidavit from 'Calvin,' meaning any details regarding the nature of his alleged statements to law enforcement come from the defendant alone."  Gov't Opp. at 13.  Syder provides no detail to substantiate Calvin's identity, or even that Calvin exists, which is wholly insufficient to establish a viable Brady claim.  See United States v. Avellino, 136 F.3d 249, 261 (2d Cir. 1998) ("In the absence of a proffer by [the defendant] of any nonspeculative basis for inferring that . . . the government had not made available to him all pertinent material in its possession, it was well within the discretion of the court to conclude that no evidentiary hearing was necessary").[10]  Thus, there is no evidence

---

[10] Petitioner nonetheless asserts that Calvin planned to prepare an affidavit but "totally 'reneged.'"  See Pet. Br. at 8; Pet. Reply Br. at 5-6.  Instead, Syder submits an affidavit from his father, in which his father claims that he met Calvin, and Calvin decided not to provide an affidavit on advice of a lawyer and out of fear of the police.  Pet. Br. at 45.  His father's hearsay affidavit does not vitiate our determination that Syder's evidence is conclusory, both

that the Government even possessed information that could have been withheld, much less actually withheld such information.[11]

Regardless, even assuming, _arguendo_, that Calvin exists, his alleged information is true, and the Government withheld it, Syder cannot show -- as he must -- a "reasonable probability" that the result at trial "would have been different" had the Government disclosed Calvin's information. See _Lamberti_, 22 F. Supp. 2d at 67. As we noted in a previous decision, "Syder's conviction . . . depended on the jury viewing the evidence of his pre-murder experiences—and any knowledge that could be inferred therefrom— together with the concrete actions that he took in concert with Peter and Campbell on October 2, 2012." _Peter I_, 2019 WL 2918226 at *14.  In other words, Syder's conviction did not depend on his day-to-day involvement in the charged marijuana conspiracy, but rather was based on his activities "just prior to, during, and immediately after Gray's murder." Gov't Opp. at 14.

Accordingly, Syder's _Brady_ claim fails, and we turn to his alleged ineffective assistance of counsel grounds.

---

with respect to Calvin's existence and the evidence he allegedly provided to the NYPD.

[11] The Government adds that it "has reviewed its case file and has been unable to locate an interview with anyone named Calvin or an interview during which a witness made statements consistent with the defendant's claim."  Gov't Opp. at 14.

### III. Syder Fails to Establish Ineffective Assistance

As noted <u>supra</u>, Syder broadly alleges three bases for his ineffective assistance claim: (a) failing to properly investigate, interview, call, and/or cross-examine certain fact witnesses; (b) failing to present an alternative theory as to why the shooting happened; and (c) failing to challenge Martinez's testimony. Pet. Br. at 10-31; Pet. Reply Br. at 8-16. None of these theories against Syder's multiple lawyers, one of whom was a member of the Southern District of New York's Capital Panel, provide a viable foundation for relief.

### a. Counsel's Decisions to Not Interview, Call, and/or Cross-Examine Certain Fact Witnesses Do Not Constitute Ineffective Assistance

Syder's claims that his counsel was constitutionally ineffective for not interviewing, calling, and/or cross-examining certain witnesses who "would have aided the defense by providing information and context to certain aspect[s] of the case," Pet. Br. at 18, fall into three distinct buckets.

<u>First</u>, Syder alleges that counsel's performance was unreasonable for failing to interview: (i) David Thompson (a/k/a "Disco"), an individual who fought with Sean Peter approximately one week before the shooting; and (ii) and Allen Bunn ("Bunn"), a witness to that fight. <u>Id.</u> at 11-12. According to Syder, interviewing Disco and Dunn would have illustrated that, contrary

to the Government's narrative, Peter's "personal vandetta [sic]" from the fight precipitated Gray's murder, not the charged marijuana conspiracy.  Id. at 11-13.

Second, Syder claims that counsel did not interview and/or call witnesses from the defendant's neighborhood -- including his girlfriend, Ashley Reynolds ("Reynolds"), his friend Christopher Dale ("Dale"), and Streets -- all of whom would have testified that the defendant was not involved in the distribution of marijuana.  See Pet. Br. at 12-14, 18-23.

Third, Syder claims in a supplemental motion under Federal Rule of Civil Procedure 15(d) that counsel was ineffective for failing to interview or cross-examine a Government witness, Larice Robinson ("Robinson"), who regularly socialized with Streets and would have allegedly testified on cross examination that Streets and Syder did not socialize together, and Streets "worked alone as a marijuana dealer."  Pet. Supp. Br. at 4-6.[12]

Starting with Bunn and Disco, Syder has not presented any corroborating evidence (such as sworn affidavits or supporting documentation) that: (i) they would have testified on his behalf;

---

[12] While the Government does not argue in its Opposition that Syder's motion to supplement under Rule 15(d) should be denied on timeliness grounds, see Gov't Opp. at 21 n.2, we note that, like the Petition, Syder's March 17, 2023 supplement is time-barred because it was filed "long after the one-year limitation set forth in Section 2255."  See Pastrana v. United States, No. 95-cv-9980 (LAP), 1999 WL 33295, at *1 (S.D.N.Y. Jan. 22, 1999), aff'd, 201 F.3d 432 (2d Cir. 1999).

(ii) Syder's assertions regarding their proposed testimony have any basis in fact; and (iii) testimony from those witnesses would have undermined confidence in the jury's verdict. Syder's "threadbare allegations" thus "fail to overcome the 'strong presumption' that counsel's conduct fell 'within the wide range of reasonable professional assistance' or that the conduct was prejudicial." Orbach, 2017 WL 5632815, at *6 (quoting Strickland, 466 U.S. at 689); see also United States v. Vargas, 920 F.2d 167, 169-70 (2d Cir. 1990) (finding conclusory speculation that one or more individuals would have testified for the defense insufficient to establish ineffective assistance); Krasniqi v. United States, 195 F. Supp. 3d 621, 634 (S.D.N.Y. 2016) (finding that "[w]ithout affidavits from . . . [the proposed] witnesses, the [defendants'] self-serving, uncorroborated and improbable assertions are insufficient to establish that their attorneys provided ineffective assistance").[13]

---

[13] In addition, the pretrial decision by counsel to not interview Bunn or Disco did not fall below an "objective standard of reasonableness," Strickland, 466 U.S. at 688, as the pretrial "duty [to investigate] . . . does not . . . compel defense counsel to investigate comprehensively every lead or possible defense or to scour the globe on the off-chance something will turn up." Greiner v. Wells, 417 F.3d 305, 320-21 (2d Cir. 2005) (internal quotation marks and citations omitted); see also Agyekum v. United States, No. 01-cv-5808 (RWS), 2002 WL 1000950, at *5 (S.D.N.Y. May 16, 2002) ("Post-hoc complaints . . . that trial counsel did not conduct a sufficiently vigorous pretrial investigation[] are typically found to be insufficient to satisfy Strickland.").

The cases from this Circuit that Syder cites in support, see Pet. Reply Br. at 9-10, are also factually distinguishable. See, e.g., Schulz v. Marshal, 345 F. App'x 627, 628 (2d Cir. 2009) (counsel was ineffective for failing to interview one of only two eyewitnesses and failing to call an available alibi

Next, Syder's claim that counsel was deficient for failing to call Reynolds, Dale, and Streets fares no better.  Unlike Bunn and Disco, these three individuals provided supporting affidavits, within which they aver that Syder was close with Sean Peter but had no association with Streets, and Syder was not involved in Streets's marijuana operation.  <u>See</u> Pet. Br. at 46-53.  However, those affidavits, without more, are also insufficient to establish that counsel was constitutionally ineffective.  "The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial" and does not constitute ineffective assistance.  <u>United States v. Nersesian</u>, 824 F.2d 1294, 1321 (2d Cir.), <u>cert. denied</u>, 484 U.S. 958 (1987).  Moreover, and significantly, even if the affidavits from Reynolds, Dale, and Streets were taken as true, none of the content therein challenges Syder's "key role in Gray's murder" as demonstrated by the specific actions he took directly before, during, and after the night of October 2, 2012.  <u>Campbell</u>, 850 F.

---

witness); <u>Ramonez v. Berghuis</u>, 490 F.3d 482, 485-91 (6th Cir. 2007) (counsel was ineffective when he failed to interview <u>three eyewitnesses</u> to defendant's physical altercation).  Indeed, one of the cases cited by petitioner supports the proposition that unsworn letters from potential witnesses are insufficient to establish an ineffective assistance of counsel claim.  <u>See</u> <u>McCollough v. Bennett</u>, No. 02-cv-5230 (ARR), 2010 WL 114253, at *11 n.6 (E.D.N.Y. Jan. 12, 2010).

App'x at 106;[14] <u>United States v. Santos</u>, 541 F.3d 63, 73 (2d Cir.
2008) (defendant's participation in "carrying out the murders" at
issue was sufficient to show that he was a participant in a
narcotics conspiracy).  It was therefore reasonable for counsel to
conclude that any potential testimony from these witnesses was
irrelevant to Syder's role in perpetrating the charged crimes.

Last, we agree with the Government that it was objectively
reasonable for counsel to conclude that there was nothing to gain
from cross-examining Larice Robinson, because Robinson did not
directly implicate Syder as a participant in Streets's marijuana
operation during his testimony.  <u>See</u> Tr. at 444:9-477:9.  In any
event, trial counsel was later able to argue to the jury -- without
having risked potentially damaging answers on cross -- that
Robinson's testimony illustrated that Syder was not involved in

---

[14] Specifically, the Circuit wrote: "[T]here was evidence from which the jury
could infer that Syder was the first appellant to identify Gray at a local deli
where Gray had gone with his friends to buy beer and snacks shortly before his
murder early in the morning of October 2, 2012, and that Syder then notified
Peter and Campbell that he had come across Gray.  Additionally, Syder—who was
wearing distinctive white sweatpants on the night of Gray's murder—was
identified as the person leading the armed charge toward Gray and his friends
and as being the first to fire his gun at the group.  Furthermore, at the
hospital, Syder told local police the same lie as had Peter and Campbell—that
Peter had been shot at a party in Paterson.  Similarly, the postmurder flight
by Syder (along with Peter and Campbell) with the getaway bag of marijuana,
marijuana distribution tools, cash, and ammunition linked to the murder provided
additional circumstantial evidence of Syder's involvement not only in the
murder, but also the marijuana conspiracy.  Moreover, as the district court
noted in denying appellants' motions for acquittal under Federal Rule of
Criminal Procedure 29, the acknowledgment by Syder and Campbell that they shared
a single cellphone also 'supported the inference that they were trusted
colleagues with common business interests.' Joint App'x at 131." <u>Id.</u>

the charged marijuana conspiracy.  See Tr. at 868:1-6 ("You have Latrice [sic] Robinson.  And he's the one who labeled Steven Syder the other dude.  And what did he see Steven Syder do?  Playing basketball, hanging out.  He never saw him selling drugs, possessing drugs or being around when someone else was selling drugs.").  Therefore, petitioner has no basis to claim that counsel ignored Robinson's supposedly exculpatory testimony.

Accordingly, Syder cannot show that his counsel was constitutionally ineffective with respect to their strategic decisions to not interview, call, and/or cross-examine Disco, Bunn, Reynolds, Dale, Streets, and Robinson.[15]  We now turn to petitioner's next ineffective assistance ground: that trial counsel failed to present a particular "personal motive" defense to the jury.

### b. Trial Counsel's Decision to Not Pursue Syder's Proposed "Personal Motive" Defense was Reasonable

Syder alleges that trial counsel was also ineffective for failing to argue that Gray's murder had nothing to do with the

---

[15] Because Syder does not meet the first Strickland prong, the Petition is dismissed.  See United States v. Best, 219 F.3d 192, 200 (2d Cir. 2000) (petitioner must establish both Strickland prongs to establish ineffective assistance).  However, Syder also cannot meet his burden of showing a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94.  At best, the proposed testimony by all six of the aforementioned individuals attacks Syder's general relationship to Streets but does nothing to undermine the evidence of his actions on October 2, 2012, which formed the basis for Syder's conviction.

charged marijuana conspiracy but rather was a response to the aforementioned fight between Peter and Disco that occurred approximately one week before Gray's death.   Pet. Br. at 15-17. As an initial matter, Sean Peter's trial counsel did advance a "personal motive" narrative in arguing that all three defendants should be acquitted: namely, that defendants participated in Gray's murder in retaliation for Martinez's attempting shooting of Peter.[16]   This proposed alternative motive was, in the Court's view, stronger than the theory Syder advances in the Petition. Clearly, the attempted shooting by Martinez -- the individual with whom Gray attempted to rob the Stash House -- is a more compelling "personal motivation" for defendants to retaliate against Gray than a fight between Peter and Disco, an individual whose connection with Gray is unclear.[17]   While that strategy failed, see Peter I, 2019 WL 2918226, at *15-*16, there is no reason to believe

---

[16] As discussed in our Memorandum and Order denying Peter's § 2255 motion, his counsel's approach was evident from his opening statement, see Peter III, 2023 WL 4053190, at *4  n.9 (citing Tr. at 50-51 ("Martinez picks up his gun, aims it at Sean Peter and tries to shoot and kill Sean Peter, but the gun jams."); Tr. 51 ("This was not about a marijuana conspiracy.  This was personal.  They had tried to kill him."), and continued throughout trial, see Tr. at 830 ("There is no doubt that Gray and Martinez conspired to commit armed robbery . . . [and] attempted the murder of Sean Peter[.]")).

[17] Our reasoning here also precludes petitioner from meeting his burden of showing a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 693-94.

that the decision by Syder's counsel to refrain from presenting a weaker theory was constitutionally ineffective.

Regardless, counsel's choice not to pursue Syder's specific alternative narrative falls well within the ambit of trial strategy, and we are "not permitted to use hindsight to second guess [counsel's] strategy choices." Baran, 160 F. Supp. 3d at 596 (internal quotation marks omitted).

### c. Counsel's Performance with Respect to Martinez's Testimony Was Reasonable.

Syder further argues that trial counsel was ineffective for failing to prevent testimony from Martinez, because his identification of Sean Peter as the individual who confronted him and Gray during the attempted robbery was, according to Syder, overly suggestive, and the Government concealed Martinez on its witness list. Pet. Br. at 23-30. Syder's ineffective assistance allegations regarding Martinez's identification of Peter at trial and the purportedly suggestive photo array fail for the reasons articulated in the Court's Memorandum and Order denying Peter's own § 2255 motion on the same grounds. See Peter III, 2023 WL 4053190, at *5-*6. Regardless, the Government is correct that Syder "lacks standing to constitutionally challenge the identification of individuals other than himself," especially because "the individual who confronted Martinez and Gray furnishes no direct evidence against the defendant." Gov't Opp. at 22

(quoting <u>United States v. Jones</u>, 652 F. Supp. 1561, 1572 (S.D.N.Y. 1986)) (internal quotation marks omitted).

Syder's contention that the Government "hid" Martinez on its witness list before trial by listing Martinez as "Victim-3" in its motions <u>in limine</u> is also unavailing.  Pet. Br. at 28-29.  That argument was addressed (and rejected) at length in a prior opinion, and no basis to revisit that decision has been presented.  <u>See</u> <u>Peter I</u>, 2019 WL 2918226, at *8.

Consequently, Syder's ineffective assistance claim with respect to Martinez also fails, and we turn to Syder's allegation that the Government engaged in prosecutorial misconduct.

## IV. Syder's Prosecutorial Misconduct Claim is Procedurally Barred and Is Meritless

Syder charges that "the prosecution offered fabricated testimony to the jury" in allowing Martinez to testify and "provided a completely fictitioous [sic] narrative," which "reek[s] of police corruption; [sic] and coercion."  Pet Br. at 31, 34.  According to Syder, this "perjured" testimony was the "basis for the Government's entire case."  <u>Id.</u> at 31.  He adds that the Government engaged in prosecutorial misconduct by failing to interview Tony Smith, (a/k/a "Teezy")[18] and Streets because

---

[18] Martinez borrowed the gun he used in the attempted robbery of Streets from Teezy.  Tr. at 516-17.

their testimony would have contradicted the Government's theory of the case.  Id. at 31–38.

Syder's allegations are procedurally defaulted because they were not raised on direct appeal.  See, e.g., Garafola v. United States, 909 F. Supp. 2d 313, 326 (S.D.N.Y. 2012) (prosecutorial misconduct claim is waived if it is not raised on direct appeal). Here, although defendants made certain prosecutorial misconduct allegations on appeal, those claims were based on the Government's opening and rebuttal summations, not Martinez's testimony or the Government's conduct with respect to Teezy and Streets.  See Campbell, 850 F. App'x at 107.[19]  Syder is therefore barred from raising his current prosecutorial misconduct grounds on collateral review unless he can demonstrate (1) "good cause to excuse the default and ensuing prejudice"; or (2) "actual innocence."  See Harrington v. United States, 689 F.3d 124, 129 (2d Cir. 2012).

Petitioner makes neither showing.  Notably, Syder cannot demonstrate cause.  To the extent that he advances an explanation for failing to raise these grounds on direct appeal, he does so by doubling back on claims that his counsel was ineffective, which we have rejected supra.  See Pet. Br. at 35; cf. Williams v. United States, No. 14-cr-784 (RJS), 2022 WL 903001, at *4 (S.D.N.Y. Mar.

---

[19] The Circuit rejected defendants' prosecutorial misconduct arguments.  Id. at 107–09.

28, 2022) (noting that only constitutionally ineffective assistance claim can establish cause for procedural default). In addition, Syder cannot make a showing of "actual innocence."[20]  As the Second Circuit found, the evidence adduced at trial provided "a sufficient basis for the jury to rationally find that [Syder]" was guilty of the charged offenses. See Campbell, 850 F. App'x at 106–07.

In any event, even assuming Syder's claims were not procedurally defaulted, his allegations are conclusory and must be denied as a result. See United States v. Romano, 516 F.2d 768, 771 (2d Cir. 1975) ("Romano has not produced any evidence of improper activity by the government and thus his motion relying on an affidavit, containing only conclusory allegations as to prosecutorial misconduct . . . was properly denied without a hearing."); accord Avincola v. Stinson, 60 F. Supp. 2d 133, 161 (S.D.N.Y. 1999). And even further assuming his allegations were not conclusory, the Government is correct, with respect to any decisions it made to not interview or call Teezy or Streets, that "it is neither required to meet with specific witnesses nor is it

---

[20] To satisfy the "actual innocence" standard, petitioner must show that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  Schlup v. Delo, 513 U.S. 298, 327 (1995).  Claims of actual innocence are "rarely successful."  Id. at 324.

required to call any witness to testify at trial." Gov't Opp. at 30; see United States v. Bahna, 68 F.3d 19, 22 (2d Cir. 1995) ("The law does not require the prosecution to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue").

## V.   Syder's Insufficient Evidence Claim Is Foreclosed

Last, Syder asserts that he is entitled to relief because the Government presented a "complete lack of evidence" at trial regarding his participation in the charged marijuana conspiracy. Pet Br. at 38–43; see also Pet. Reply Br. at 22–25. This argument was comprehensively addressed -- and rejected -- by the Second Circuit on direct appeal, Campbell, 850 F. App'x at 106–07, and a Section 2255 petitioner "may not . . . relitigate questions which were raised and considered on direct appeal." United States v. Becker, 502 F.3d 122, 127 (2d Cir. 2007) (quoting Cabrera v. United States, 972 F.2d 23, 25 (2d Cir. 1992)); accord Pitcher, 559 F.3d at 123; Mui v. United States, 614 F.3d 50, 55 (2d Cir. 2010). Thus, this ground for relief is foreclosed.[21]

---

[21] Regardless, we would reject petitioner's argument on substantive grounds for the same reasons articulated by the Circuit in Campbell and this Court's own examination of these issues in Peter I.  See Peter I, 2019 WL 2918226, at *9–*18; Campbell, 850 F. App'x at 106–07.

**CONCLUSION**

For the foregoing reasons, Syder's motion is denied.[22]  The Clerk of Court is respectfully directed to terminate the pending motions at Dkt. 17-cr-54-03, ECF Nos. 198, 204; Dkt. 22-cv-9896, ECF Nos. 2, 6; and close the case at Dkt. 22-cv-9896.  Further, as Syder has failed to make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability.  28 U.S.C. § 2253.  It is hereby certified that any appeal from this Memorandum and Order would not be taken in "good faith" within the meaning of 28 U.S.C. § 1915(a)(3).  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).


**SO ORDERED.**


Dated:      New York, New York
            September 11, 2023

                                    _____
                                      NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE

---

[22] The existing record is conclusive that Syder is not entitled to relief on any theory presented to this Court, and accordingly, the Court denies the Petition without holding an evidentiary hearing.  See 28 U.S.C. § 2255(b) (the Court need not hold an evidentiary hearing on a habeas petition if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief").

-30-